IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2003

## TERRELL LAWRENCE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-A-272     J. Randall Wyatt, Jr., Judge**

---

**No. M2002-01851-CCA-R3-PC - Filed August 7, 2003**

---

The petitioner, Terrell Lawrence, appeals the denial of his petition for post-conviction relief from his convictions for second degree murder, aggravated assault, and carjacking, arguing that his guilty pleas were not knowing, understanding, and voluntary and that he was denied the effective assistance of counsel during the plea process. The post-conviction court denied the petition and, following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Ron Munkeboe, Jr., Nashville, Tennessee, for the appellant, Terrell Lawrence.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James F. Todd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The petitioner was indicted on nine counts arising out of an April 2000 robbery and shooting, including two counts of first degree murder, three counts of aggravated assault, and one count each of attempted first degree murder, aggravated robbery, attempted aggravated robbery, and carjacking. In September 2001, he pled guilty to second degree murder, aggravated assault, and carjacking, and the remaining counts were dismissed. For the second degree murder charge, the petitioner received a twenty-five-year sentence, and for the aggravated assault and carjacking charges, he received sentences of four and ten years, respectively. The assault and carjacking sentences were ordered to be served concurrently, but consecutively to the second degree murder sentence, for an effective sentence of thirty-five years. No direct appeal was filed by the petitioner.

At the petitioner's guilty plea hearing, the State presented the following summary of the facts as to the offenses:

> Had this case gone to trial, the State's proof would have shown that on April the 19th of 2000, a group of individuals, including Wallace Seats, Derrick Ferguson, Paul Swanson, Janie Ferguson, Janice Ferguson, Will Rogers and William White, were unloading a U-haul truck in the area of 500 Pappas Court, when the two defendants, dressed in all black wearing ski masks that covered everything but their eyes, both carrying weapons, approached first Mr. Paul Swanson and demanded the keys to his Cadillac. Mr. Swanson, who did not have the keys on him at that time, fled the scene in [an] attempt to call the police.
>
> At that point, both defendants approached the group of individuals, approaching Janie Ferguson demanding the keys to the Cadillac. [The petitioner] was armed with a .22 caliber rifle. And [the codefendant] was believed to be armed with either a Tech Nine or an Uzi Machine Gun. At that point, Ms. Ferguson became nervous and dropped her keys. [The petitioner] said, what do think [sic] I'm playing and shot and killed Mr. Wallace Seats by shooting him in the chest.
>
> At that time, Ms. Ferguson became more nervous. And at that point, [the petitioner] then shot Derrick Ferguson striking him in the leg and injuring him.
>
> Finally the suspects were able to take the keys to the Cadillac. At that point, they activated the Cadillac's car alarm and were not able to leave. After disabling the car alarm, they got in the car in an attempt to drive off. The car, however, was also equipped with a club security device which disabled the car from turning. As a result, the defendants crashed the car a few blocks later.
>
> During the drive, they removed their masks and a neighbor saw them flee the car after they crashed it and [was] able to identify them to the police.
>
> [The codefendant], after he was arrested, gave a statement implicating himself and his fingerprints were found on the Cadillac.

The record on appeal includes copies of the "Petition to Enter Plea of Guilty," bearing the petitioner's signature, as well as a transcript of the hearing at which the petitioner and his codefendant both pled guilty.

In January 2002, the petitioner filed a *pro se* petition for post-conviction relief, which was subsequently amended by appointed counsel. The amended petition alleged that he was denied effective assistance of counsel and that his pleas of guilty were not voluntary, knowing, and understanding. Following an evidentiary hearing in June 2002, the post-conviction court denied the request for relief, and the petitioner timely appealed to this court.

At the evidentiary hearing, the petitioner testified that he was sixteen years old at the time the offenses were committed. He said he told trial counsel that he was innocent of the charges and wanted to go to trial. Counsel met with him four to five times, each visit lasting ten to fifteen minutes, and told him that he should not go to trial because he would be found guilty. The petitioner's family also advised him to accept the State's plea offer because trial counsel told them that the petitioner would receive a life sentence. Regarding his plea petition, the petitioner said that trial counsel did not read over it with him and did not explain to him any of his constitutional rights, and he signed it because he was "scared of getting a life sentence because of what [trial counsel] was telling [him]." According to the petitioner's testimony, trial counsel instructed him to "say guilty on questions that are answered for guilty and say yes, sir, to the Judge when he asked [the petitioner] questions." The petitioner further testified that counsel intimidated him into pleading guilty, and that, had he not been pressured by counsel and by his family, he would have insisted on going to trial.

On cross-examination, the petitioner testified there was no evidence against him although admitting writing a letter to trial counsel, which said that he had armed himself with a gun, put a mask over his head, tried to steal a car, and shot two people in the process. At the hearing, the petitioner explained that he had written this letter because he "was trying to protect a friend." The petitioner said that, because he had been scared, he had stated at the submission hearing that he understood his rights, wished to waive the rights, and plead guilty.

Trial counsel testified that he had twelve years of experience in criminal defense for the public defender's office, and had worked on "maybe a thousand" criminal cases. He recalled, from his records, approximately eighteen meetings with the petitioner, several of them being visitations in jail. Counsel testified that there was a strong chance of the petitioner receiving a life sentence, and he thought it was in the petitioner's best interest to accept the guilty plea offer. A witness named Oscar Brown, who had testified at the petitioner's juvenile transfer hearing, identified the petitioner as being in the victims' car when it crashed. Counsel explained the circumstances of the identification:

> Oscar Brown identified him, basically, at the scene . . . that day. My file indicates that they wrecked the car immediately after the . . . shootings and the robbery of the – and the theft of the car. They

> wrecked. The police came and canvassed the area, secured the crime
> scene. They found Mr. Brown as a witness that day, and Mr. Brown,
> I think even may have taken them and shown [them] where . . . one
> of them lived and identified them from a mugshot. So that was pretty
> much at the same time that the crime occurred. And Mr. Brown was
> a witness.

Additionally, the petitioner's codefendant was willing to testify against him, according to trial counsel. Counsel said the petitioner's claims that he had not gone over the plea petition with him and that his rights had not been explained to him were "false."

Counsel testified that, while he felt strongly about the petitioner taking the State's offer, he did not coerce him into doing so. He stated that although he recognized it was the petitioner's right to go to trial, he felt that he would "be making a huge mistake and he would spend the rest of his life in prison," if the charges were tried. Counsel further stated that he went over the plea petition with the petitioner for over a half-hour the day before the plea hearing and explained all of his rights to him:

> [W]e'd put a lot of work in this case and I went over the plea petition
> with him the day before. I knew that it was going to be an important
> day and I wanted to spend a lot of time with him and it wouldn't be
> rushed. So I went to the jail and went over the paperwork and read
> it to him at the jail.

## ANALYSIS

### I. Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

The petitioner argues that trial counsel was ineffective by failing to "adequately consult" with him regarding the consequences of his guilty pleas and by inducing him into pleading guilty.

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a

reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Additionally, the petitioner argues that his guilty pleas were not entered knowingly and voluntarily because he was "coerced" by trial counsel and "pressured" by his family to plead guilty.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Since the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5)

the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the submission hearing shows that, after being sworn, the petitioner and his codefendant were advised in detail by the trial court as to their rights and questioned individually at length as to the disposition being presented to the court. Among his responses, the petitioner said that he understood what he was "about to do"; that he wished to "give up [his] right to a Jury trial"; that he understood the sentences he was to receive, as explained by the court; that he had gone over the plea documents with counsel; that counsel had explained "each and every part" of the document; and he understood it. At the post-conviction hearing, the petitioner's explanation of these responses was that, because he was scared, he was untruthful at the submission hearing.

In its order denying the petitioner's request for post-conviction relief, the court found that the petitioner's guilty pleas were knowing and voluntary:

> The Court heard testimony from the Petitioner and [trial counsel] at the hearing. [Trial counsel] testified that he has been practicing criminal law since 1990, when he began practicing with the Public Defender's Office. [Trial counsel] testified that he has handled a number of criminal cases and has engaged in a significant amount of trial work. [Trial counsel] indicated, based on the evidence of this case and his previous experience with similar cases, that he was of the opinion that the Petitioner would likely be convicted and receive a sentence of life imprisonment if the Petitioner's case went to trial. The evidence included a letter written by the Petitioner in which he admitted to committing the crimes as well a [sic] witness who identified the Petitioner at the crime scene. [Trial counsel] testified that he met with the Petitioner and the Petitioner's family to discuss the possibility of going to trial and the risks involved as opposed to accepting the plea agreement. [Trial counsel] indicated that he explained the plea agreement in detail to the Petitioner and explained all of the Petitioner's rights. [Trial counsel] further testified that the Petitioner and the Petitioner's family felt that the plea agreement was the best available option, and that the Petitioner made the decision to enter into the agreement of his own free will. Based on this testimony, the Court is of the opinion that the Petitioner entered into the plea agreement knowingly and was in no way forced or coerced.

The record supports the post-conviction court's conclusion that the guilty pleas were knowing and voluntary.

Accordingly, the post-conviction court concluded that trial counsel was not ineffective and that the petitioner was not prejudiced by counsel's actions:

> Based on the testimony previously mentioned, the Court finds that [trial counsel's] representation of the Petitioner was thorough and competent. The Petitioner fails to offer any proof that [trial counsel's] representation was deficient or that any deficiency was prejudicial to the plea proceedings. Accordingly, the Court must reject the Petitioner's claim.

Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. The record supports this conclusion as well as the concomitant determination that the petitioner failed to establish either that trial counsel was ineffective or that he was prejudiced by counsel's actions.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE